UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SHONTEL REDDICK,

     Petitioner,

v.                                                    Case No. 4:17cv292-RH-HTC

SECRETARY FLORIDA DEPARTMENT
 OF CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Shontel Reddick's habeas corpus petition under 28 U.S.C. § 2254, challenging his judgment and conviction for aggravated battery causing great bodily harm in Leon County circuit court case 2010-CF-2318 on six (6) grounds of ineffective assistance of counsel. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition and the State's responses (ECF Doc. 19 &

24) and allowing Reddick an opportunity to file a reply,[1] the undersigned recommends the petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    The Offense And Conviction

In the early morning hours of September 29, 2010, police in Tallahassee, Florida, were flagged down by Jovan Griffin ("Griffin"), who was bleeding from a gash in the back of his head.  He told police he had been jumped and hit in the head with a pistol.  He described one of his assailants as a large black male with a Mohawk haircut that worked at Popeye's.  While police were speaking with Griffin, a maroon car drove past, and Griffin alerted police that the car was the one in which those who had beaten him had fled.  The driver of the car matched the description of the assailant with the Mohawk haircut.

Police stopped the vehicle and learned that Reddick was the driver.  They also noticed that Reddick had blood on his arm and that blood was on the armrest of the door.  The blood was swabbed, DNA tested, and identified at trial as belonging to Jovan Griffin.

At trial, Griffin testified that he was walking to a friend's house to get a video when he was approached by a white male in a car he did not know.  ECF Doc. 19-3 at 157-80.  He told the individual that he, Griffin, was "not who you're looking for."

---

[1] Reddick was given a chance to file a reply, but did not do so.  ECF Doc. 25.

*Id.* at 163. Shortly thereafter, Reddick, and co-defendants Darius Bee ("Bee") and Christine Sapp ("Sapp"), who lived in a nearby apartment, came out of the apartment and confronted Griffin. *Id.* at 166-69. Bee asked Griffin why he was talking to the other individual and struck Griffin in the side of the head with a gun. Then Reddick struck Griffin in the back of the head with a black and silver gun. Also, Griffin testified that other people were out there beating him as well, and that Sapp had her pit bull, Yams, who bit Griffin's lower leg during the confrontation.

Eventually, Griffin was able to get up and get away, and the group dispersed. Griffin testified that he was not the aggressor and that he suffered gashes in his head that required staples, and which caused permanent scars. *Id.* at 180.

Investigators went to the scene and interviewed an eyewitness, Lorraine Holloway ("Holloway"), who testified at trial. *Id.* at 111-22. She stated she was visiting a friend in a nearby house on the night of September 29, 2010. She testified she was inside the house and came outside when she heard the confrontation begin. She witnessed several people – including Reddick and Bee, both of whom she knew from the neighborhood -- jumping on Griffin. She saw another individual wearing a black shirt (who was not Reddick or Bee) hit Griffin with a gun and then wrap it up in a black bandana. After Griffin freed himself, Holloway saw the individual with the black shirt get into Reddick's maroon car and drive away with Reddick driving. *Id.* at 121.

Investigators searched the apartment that Sapp, Reddick and Bee came out of and found a .38 handgun under a black bandana. *Id.* at 209. DNA testing revealed that Reddick was not excluded as a minor donor of DNA on the bandana, and Sapp was confirmed to be a major donor of DNA on the bandana. The police also found a white t-shirt in the apartment, soaked in blood determined to be Griffin's and containing Bee's DNA as a major donor in the collar region. *Id.* at 244-45.

Another co-defendant, Willie Moore ("Moore"), testified for the defense and told the jury that he witnessed the incident but did not see Reddick with a gun. ECF Doc. 19-3 at 285. He also testified that Reddick was involved in the beating, *id.* at 288-89, but that it was the victim who started the fight by pushing Bee. *Id.* at 298. Neither Sapp nor Bee testified at trial.

On November 16, 2011, a jury found Reddick guilty of Aggravated Battery Causing Great Bodily Harm but checked "no" to two questions about whether he possessed or used a firearm. *Id.* Reddick was sentenced on December 7, 2011 to fifteen (15) years imprisonment. *Id.* at 101.

## B.    Postconviction Proceedings

### 1.    Direct appeal

Reddick, through counsel, filed a timely notice of appeal to the First District Court of Appeal ("First DCA") on December 12, 2011, but his counsel filed an *Anders* brief indicating no basis for appeal. *See* First DCA case number 1D11-6654;

ECF Doc 19-6 at 33. On May 23, 2012, the First DCA gave Reddick thirty (30) days to file an initial brief *pro se*. *Id.* at 59. Despite receiving an extension of time to do so, Reddick did not file a brief. The First DCA affirmed *per curiam* and without written opinion on October 11, 2012. *Id.* at 61. The mandate was issued November 6, 2012. *Id.* at 63.

Thus, the judgment, for purposes of 28 U.S.C. § 2244(d)(1),[2] became final on **January 9, 2013**, upon the expiration of the 90-day period in which Reddick could have sought direct review of his conviction in the United States Supreme Court. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("the entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review, within the meaning of Supreme Court Rule 13.3 and 28 U.S.C. § 2244(d)(1)(A)").

## 2.    Applications for postconviction review

On April 5, 2012, while Reddick's direct appeal was pending, Reddick filed a motion to correct sentencing errors involving two fines imposed in the judgment but not pronounced during sentencing. The trial court granted the motion and

---

[2] The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year limitations period for filing a § 2254 petition. 28 U.S.C. § 2244(d)(1). The period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" (unless one of the later dates enumerated in the statute applies – which they do not here). *Id.* § 2244(d)(1)(A). The limitations period is tolled for the time during which a "properly filed" postconviction motion is pending in state court. *Id.* § 2244(d)(2).
    .

ordered the clerk of court to prepare an amended judgment reflecting this change. The amended judgment was signed by the judge on May 3, 2012. Since it was entered before the direct appeal was resolved, the amended judgment did not affect the date the conviction became final under the AEDPA.

Reddick filed a 3.850 motion for postconviction relief on September 30, 2013. ECF Doc. 19-8 at 4. The motion was dismissed as facially insufficient with leave to amend on October 14, 2013, a second attempt was dismissed on January 24, 2014, and Reddick was given sixty (60) days to file an amended motion. On March 26, 2014,[3] Reddick submitted to prison mail officials a 3.850 motion that was accepted by the circuit court. ECF Doc. 19-7 at 5. After an evidentiary hearing on August 17, 2016 (transcript at ECF Doc. 19-7 pp. 50 to 115), the circuit court denied the 3.850 motion on the merits. ECF Doc. 19-7 at 48.

Because the dismissal of the first two motions for postconviction relief were with leave to amend, the 3.850 motion is considered continuously pending from the date the first attempt was filed, September 30, 2013. *Hall v. Sec'y, Dep't of Corr.*, 921 F.3d 983, 988 (11th Cir. 2019) (holding that, when a postconviction motion is

---

[3] The motion bears a time-stamp from the Bay Correctional Facility that it was sent "for mailing" on March 4, 2014. ECF Doc. 19-7 at 21. However, that appears to be the date that Reddick mailed the signed motion to his attorney, not the court for filing. The attorney then electronically filed the motion on March 26, 2020. *Id.* at 5; ECF Doc 24 at 4. Thus, the date of filing is March 26, 2020 and is not affected by the mailbox rule. *See* Habeas Rule 3(d) and *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.).

stricken with leave to amend, the amended motion relates back to the date of the original filing and "not only was the time between the corrected Rule 3.850 motion and its disposition tolled, but so too was the time between the original, deficient Rule 3.850 motion and the filing of its properly sworn substitute.").  Therefore, 264 untolled days passed off the AEDPA clock between the finality date of the judgment (January 9, 2013) and the filing of the 3.850 motion on September 30, 2013.

Reddick appealed the circuit court's denial of the 3.850 motion, and the First DCA affirmed *per curiam* and without written opinion on June 8, 2017.  *See* First DCA case number 1D16-4196; *Id.* at 158.  The mandate was issued July 6, 2017. ECF Doc. 19-8 at 2.  The instant federal petition was delivered to Okaloosa CI mail officials on June 28, 2017, while the AEDPA clock was still tolled.  *See King v. Sec'y, Fla. Dept. of Corr.*, 2017 WL 6760186, *1 (11th Cir. Jan. 5, 2017) (holding federal one-year period is tolled upon properly filed postconviction motion and remains tolled until the appellate court issues its mandate).  Thus, the instant petition is timely filed.

## II.    STANDARDS OF REVIEW

### A.    Federal Review Of State Court Decision

Under the standard of review for a § 2254 motion, this Court should not  grant habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).

Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the . . . case."  *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring).  Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

Additionally, when an issue is raised to the state appellate court, but no written decision is issued, this Court should look through that unwritten decision to the last

related state court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Thus, applying *Wilson,* the undersigned will look through the First DCA's decision to the state court's reasons for denying relief as to grounds one and two (the only grounds raised with the state courts) to determine whether relief should be granted here.

### B.    Legal Standard For Ineffective Assistance Of Trial Counsel

Reddick's petition includes six (6) claims of ineffective assistance of trial counsel ("IATC"). ECF Doc. 1. To prevail on these claims, Reddick must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984), requiring that she show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The deficient performance prejudiced the defendant only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome." *Id.* at 694. To prevail on a claim of ineffective assistance of counsel, both parts of the *Strickland* test must be satisfied. *Bester v.*

*Warden, Att'y Gen. of the State of Ala.*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)).  However, a court need only address one prong, and if it is found unsatisfied, the analysis ends.  *Id.*

## III.   DISCUSSION

As set forth below, the undersigned finds grounds one and two should be denied because Reddick has not shown the state courts' determination of those issues was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  ECF Doc. 24.  Additionally, grounds three through six also do not entitle Reddick to relief because they are not exhausted and are procedurally defaulted.

### A.   Ground One:  Ineffective Assistance Of Counsel ("IATC") For Failure To Move To Sever Reddick's Trial From His Co-defendants'

In ground one, Petitioner argues trial counsel was ineffective for not moving to sever his trial from his codefendants' "based on a recorded jail call held between the codefendants implicating their guilt based on a violation of *Bruton v. United States.*"  ECF Doc. 1 at 3.

Petitioner previously asserted this claim in ground one of the Petitioner's 3.850 motion.  ECF Doc 19-7 at 8.  After an evidentiary hearing, the state court denied that motion in open court.  ECF Doc. 19-7 at 109-12.  The judge reasoned that the statements by co-defendants Bee and Sapp actually tended to exculpate

rather than inculpate Reddick, since Bee stated he was going to admit to being the sole perpetrator. ECF Doc. 111 at 12. Also, the court noted that Petitioner's counsel had successfully moved to sever other charges, relating to drugs, from the battery charges. Therefore, the state judge concluded that there was no legal basis for a severance.

"In *Bruton*, the Supreme Court held that the admission of statements by a nontestifying codefendant that inculpated another defendant in a joint trial violated the defendant's Sixth Amendment right to confrontation." *United States v. Brazel*, 102 F .3d 1120, 1140 (11th Cir. 1997). "No *Bruton* problem exists, however, where the statement 'was not incriminating on its face and became so only when linked with evidence introduced later at trial.'" *Id.* (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)). "Thus, '[f]or *Bruton* to apply, a codefendant's statement must be clearly inculpatory standing alone.'" *Id.* (quoting *United States v. Arias*, 984 F.2d 1139, 1142 (11th Cir. 1993)); *see also United States v. Samson*, 540 F. App'x 927, 932 (11th Cir. 2013) ("While Constant's references to three other robbers might have helped incriminate Samson when linked with the other evidence presented at trial, this is insufficient to sustain a *Bruton* violation, as the 32 statements were not incriminating on their faces."); *United States v. Satterfield*, 743 F.2d 827, 849 (11th Cir.1984) (a statement "must be clearly inculpatory standing alone" to fall within the coverage of *Bruton*).

As the following excerpts show, the recorded conversation between Sapp and Bee (i.e., State's Trial Exhibit No. 42) that occurred on March 22, 2011 was not incriminating to Reddick on its face:

DEFENDANT SAPP: I'm sorry.

DEFENDANT REDDICK [SIC]: Yeah. And, Will, he got, he got, he got felony battery with bodily harm. They dropped the aggravated battery down.[4]

DEFENDANT SAPP: They dropped me down.

DEFENDANT BEE: Yeah.

DEFENDANT SAPP: So what ...

DEFENDANT BEE: That's all he got.

DEFENDANT SAPP: ls everybody going to trial?

DEFENDANT BEE: That's what it look [sic] like. I mean, I might, I might -- I'm going to eat the battery thing when they drop down to aggravated. I'm going to eat that and say, you know what I mean, tell them that it was just me.

DEFENDANT BEE: Well, they don't know. They don't know. Once they drop the aggravated down, I'm going to eat, I'm going to eat that. I'm going to eat that. So that will take that off the bus, you know. I'll just tell them ain't nobody have [sic] nothing to do with it. (State's Exhibit 42 excerpt concluded and continues to next excerpt as follows):

---

[4] The statement attributed to "DEFENDANT REDDICK," above, appears to be a typographical error by the court reporter, as the record indicates that the only two participants in the conversation were Christine Sapp and Darius Bee. Also, the person named "Will" is likely a reference to codefendant, Willie L. Moore.

DEFENDANT SAPP: Well, what the fuck, man, because -- oh, Lord, that shit is crazy. I don't want to go to prison, because I don't -- I didn't do nothing. You feel me?

DEFENDANT BEE: Yeah, dog.

DEFENDANT SAPP: This nigger lying. Like, this nigger is straight lying on me.

DEFENDANT BEE: Yeah. That's it. And then the chick, she talking [sic] about some other things. She's talking about she seen what was going on from her house way over on the couch. Well, like, that shit, like, 60 to a hundred yards away at nighttime.

DEFENDANT SAPP: Yeah. Because she -- and then, you know, what's this thing about her is that she ain't seen a thing. You know what I'm saying? Because that will help my case out. But then I'm like they just telling different lies. Both of them are liars. Both of them are liars, she locked up, I believe.

ECF Doc. 19-3 at 275-29.

The call did not mention Reddick.  Also, Bee seems to be indicating on the call that he planned to tell officials he was the only one involved.  Additionally, during the call Bee and Sapp complained that the witnesses lied about the incident, which would tend to denigrate their credibility and help Reddick's case.  Thus, the conversation was not inculpatory to Reddick, much less "clearly inculpatory."

Therefore, the state court's finding that Petitioner's trial counsel's performance was not deficient for not moving to sever on *Bruton* grounds was not objectively unreasonable.  *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (explaining that counsel cannot be deficient for failing to raise a meritless claim);

*see Owen v. Sec'y, Dep't of Corrs.*, 568 F.3d 894, 915 (11th Cir. 2009) (stating that failure to raise a meritless claim cannot constitute ineffective assistance).

Moreover, even assuming counsel's performance was deficient for not moving to sever on *Bruton* grounds, Petitioner still would not be entitled to relief. Petitioner has failed to establish a substantial likelihood that the result of his trial would have been different had counsel moved to sever. *Harrington v. Richter*, 562 U.S. 86, 112 ("The likelihood of a different result must be substantial, not just conceivable."). Indeed, the judge who denied the 3.850 motion, who was also the trial judge, stated he would not have granted a motion to sever had counsel moved to do so. ECF Doc. 111. Thus, the state court's finding that Petitioner was not prejudiced by counsel's performance also was not objectively unreasonable. *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014) (recognizing that a petitioner could not be prejudiced by his counsel's failure to raise a meritless claim).

**B.    Ground Two: IATC For Failure To Move For A Continuance When An Amended Information Was Filed On The Eve Of Trial**

In ground two, Petitioner argues trial counsel was ineffective for failing to move for a continuance "when the State filed a belated amended information adding the great bodily harm form of aggravated battery." ECF Doc 1 at 4. Specifically, Reddick argues counsel was deficient for failing to move for a continuance to "research defenses, investigate, and depose hospital personnel" and was "ill prepared

to defend against the newly charged offense" involving an element of great bodily harm. *Id.* at 5. Petitioner raised this claim as ground three of his 3.850 motion.

Reddick was initially charged on October 19, 2010 with, among other crimes not relevant to this petition, aggravated battery with a firearm actually possessed by Reddick. ECF Doc. 19-2 at 1, Count II. The information was amended on November 4, 2010, to add Moore as a co-defendant, *id.* at 3. It was amended a second time on August 8, 2011 to add a charge of possession of heroin against Reddick and Sapp. *Id.* at 5. A third amended information was filed in open court on November 10, 2011, which changed the language in the aggravated battery count against Reddick. ECF Doc. 19-2 at 8-13. And, a fourth amended information was filed in open court the day before the trial, November 14, 2011.

The state court judge denied this ground in open court, concluding that he would have denied the motion for a continuance if made because Reddick was not prejudiced by the third amended information. Even though the amended information added language allowing for a finding of aggravated battery based on great bodily harm or disfigurement (rather than just for a firearm), Reddick's defense was already prepared to show that even if he were involved, he was not involved in causing serious bodily injury to the victim. ECF Doc. 19-7 at 112-13. The court also noted that counsel made the "strategic decision to proceed so that the State would not have

time to gather further evidence on the medical front from an objective witness." *Id.* at 112.

The undersigned does not find error in the state court's determination. Strategic choices of counsel made after thorough investigation of the law and facts relevant to plausible options are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)*; see also, e.g., Dingle v. Secretary for Dept. of Corrections*, 480 F.3d 1092, 1099 (11th Cir. 2007). As the Eleventh Circuit stated in *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000), "a court must not second-guess counsel's strategy." *Id.* 218 F.3d at 1314, n.14.

At the evidentiary hearing, trial counsel testified that he believed a continuance would have just given the State more time to gather evidence against his client, which the State did not then have. Specifically, counsel testified that "there is no medical testimony, there was no medical reports, there was no doctor, there was no nurse listed as a witness." ECF Doc. 19-7 at 77. Thus, "the only evidence is going to be the victim, that's not very good evidence, I thought. In my estimation, that would not be very strong evidence, so why we would want to give

them time to bring in medical personnel and reports, or a doctor that could come in and say oh, yeah, that was a severe injury?".  *Id.*

Counsel's strategic decision not to allow the State additional time to acquire additional evidence against Petitioner is also reflected in his closing argument.  As set forth below, during argument counsel emphasized the insufficiency of the State's evidence to prove that Petitioner inflicted great bodily harm, permanent disability, or permanent disfigurement on the victim:

> Aggravated battery with great bodily harm. The instruction says that it was intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement. Has their [sic] been any evidence that Mr. Reddick intentionally or knowingly caused great bodily harm or permanent disability or permanent disfigurement? Did we see any medical records? Was there any testimony about any permanent disability? Was there any testimony or evidence of permanent disfigurement? Mr. Griffin was sitting right there. Your observations of him, I'll leave it to you collectively, as the jury, to decide, if you noticed any permanent disfigurement on Mr. Griffin.

ECF Doc 19-4 at 62-63.

The state court's finding that counsel was not deficient for failing to move for a continuance was not objectively unreasonable or based on an erroneous factual determination.  The strategic choice was not "so patently unreasonable" that no competent lawyer would have chosen it.  *See Adams*, 709 F.2d at 1445; *Bonner v. Davis*, No. 4:16-CV-347-Y, 2018 WL 1035095, at *6 (N.D. Tex. Feb. 23, 2018) ("Because the risk outweighed any possible benefit for requesting a continuance, [counsel's] decision to not request a continuance was the result of reasonable trial

strategy."); *Day v. Beckstrom*, No. 16-5610, 2017 WL 5256236, at *3 (6th Cir. Feb. 9, 2017) (trial counsel's decision to not request continuance to subpoena witness during trial upheld as reasonable strategic decision).

Moreover, counsel's failure to move for a continuance was not prejudicial. As stated above, the state court judge stated he would not have granted a motion to continue had counsel moved to do so. Thus, Petitioner's assertion that "[h]ad counsel moved to continue the hearing, it would have been granted by the trial court" (ECF Doc. 1 at 5), is refuted by the record.

### C.    Grounds Three, Four, Five And Six Are Procedurally Defaulted

Before filing a habeas petition in federal court, a petitioner must exhaust all available state court remedies. 28 U.S.C. § 2254(b), (c). A failure to exhaust occurs "when a petitioner has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (internal quotation marks and brackets omitted). For an issue to be "fairly presented," a petitioner must have "presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal citations and quotations omitted).

A petitioner seeking federal habeas corpus relief who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To establish actual prejudice, a petitioner must show there is at least a reasonable probability that the result of the proceeding would have been different. *See, e.g., Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

In his petition, Reddick admits he did not present grounds three through six to any state court. Reddick, nonetheless, argues that under *Martinez v. Ryan,* 566 U.S. 1, 14 (2012), his postconviction counsel's ineffectiveness suffices to show cause and prejudice. *See, e.g.,* ECF Doc. 1 at 7. "In *Martinez*, the Supreme Court held that ineffective assistance of counsel during state collateral proceedings that provide the first occasion to raise a claim of ineffective assistance at trial may establish cause for a prisoner's procedural default in a federal habeas proceeding of a claim of ineffective assistance of trial counsel." *Campbell v. Jones*, 2017 WL 4127621 at 3 (11th Cir. Mar. 9, 2017), *cert. denied*, 138 S. Ct. 424 (2017). However, "[t]o overcome the default, a prisoner must also demonstrate that the underlying

ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See Martinez*, 566 U.S. at 14.

As discussed in the next section, like grounds one and two, grounds three through six also fail on the merits; therefore, Reddick cannot avail himself of *Martinez*. Additionally, Petitioner cannot show actual prejudice because he cannot establish a substantial likelihood that the result of his trial would have been different. *See Harrington*, 562 U.S. at 112. As discussed above, the evidence at trial included testimony from the victim that Reddick was stopped in a car spontaneously pointed out by the victim moments after the attack and later stated to be the getaway car by an eyewitness. The victim's description of one of his assailants matched the driver of the car, Reddick. Reddick was covered in what was determined to be the victim's blood by DNA testing. Also, the eyewitness testified she knew Reddick from the neighborhood and specifically identified him as one of the assailants. Thus, the evidence against Petitioner was sufficient to support a finding of guilt and no fundamental miscarriage of justice would result by this Court's failure to consider the procedurally defaulted claims.

Moreover, Reddick would be barred from going back to state court and asserting grounds three through six now because such a motion would be untimely under Florida procedural rules. Fla. R. Crim. P. 3.850(b) ("A motion to vacate a

sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final. . . ."); *Kimbrough v. Sec'y, Fla. Dep't of Corr.*, No. 18-10502, 2020 WL 1933929, at *6 (11th Cir. Apr. 22, 2020) ("Under Rule 3.850, a petitioner must file a motion for postconviction relief within two years of the criminal judgment, and any motion filed outside of that two-year period may not be considered unless the motion alleges that the facts on which the claims for relief are predicated could not have been discovered earlier by the exercise of due diligence."). Therefore, these grounds are procedurally defaulted and cannot be considered.

### D.     Grounds Three, Four, Five And Six Fail On Their Merits

As stated above, Petitioner did not present grounds three, four, five, or six to the state courts. Thus, he must show "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14 (comparing favorably *Miller–El v. Cockrell,* 537 U.S. 322 (2003) (describing standards for certificates of appealability to issue)). As the Court explained in *Miller–El,* "[a] petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327. Where a petitioner must make a "substantial showing" without the benefit of a merits

determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "[A] claim can be debatable even though every jurist of reason might agree, after the . . . case has received full consideration, that petitioner will not prevail." *Miller–El,* 537 U.S. at 338.

For the reasons explained below, the undersigned finds that Reddick does not raise a debatable claim of ineffective assistance of counsel based on the grounds asserted.

1. <u>Ground Three: IATC for failure to investigate medical record and to depose and call medical personnel to testify regarding the injuries the victim sustained</u>

Petitioner claims that had defense counsel investigated the medical records and deposed the medical personnel, he could have presented their testimony at trial as evidence that "the injuries did not constitute great bodily harm or permanent disfigurement within the meaning of aggravated battery." ECF Doc. 1 at 6.

Florida Statutes section § 784.045 provides that a person commits aggravated battery if he or she "causes great bodily harm, permanent disability, or permanent disfigurement." Scarring is often found to be "permanent disfigurement" under Florida law. *See, e.g., Guthrie v. State*, 407 So. 2d 357, 358 (Fla. 5th DCA 1981) (finding that 12-inch scar requiring stitches suffced to make blows to the head with

a metal flashlight an aggravated battery causing permanent disfigurement). When a

scar is present, the question of whether it is disfiguring is a question of fact for the

jury. *See Gillman v. Gillman*, 319 So. 2d 165 (Fla. 1st DCA 1975) ("a permanent

scar may be a permanent disfigurement . . . . We do not imply that every scar is a

disfigurement but when the existence of the scar is established, whether or not it is

a disfigurement is a matter of fact to be determined by the trier of fact."); *Cohen v.

Pollack*, 674 So. 2d 805,806 (Fla. 3d DCA 1996) ("whether a facial scar is a

disfigurement is for the jury's observation and evaluation and is not subject to

determination as a matter of law"); *Keef v. State*, 220 Ga. App. 134, 469 S.E.2d 318

(1996) (whether victim's 2-inch scar under the hairline constituted serious

disfigurement was a jury question).

The victim in this case testified he suffered gashes in his head that required

staples and caused permanent scars. ECF Doc. 19-3 at 180. As noted above, counsel

explained at the evidentiary hearing that he chose not to request a continuance

because he did not want to give the State an opportunity to "bring in medical

personnel and reports, or a doctor that could come in and say oh, yeah, that was a

severe injury." ECF Doc. 19-7 at 77. Thus, it was trial counsel's opinion that

testimony of the hospital staff would only have helped the State prove its case by

calling more attention to the victim's scars. Counsel's decision not to call the hospital

staff as defense witnesses was based on a reasonable trial strategy. *See Strickland*,

466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."); *McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984) ("Counsel will not be deemed unconstitutionally deficient because of tactical decisions.") (citing *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir.1983)).

Moreover, even if counsel's performance was deficient for not calling the hospital personnel as defense witnesses, Petitioner still would not be entitled to relief because Reddick has failed to establish prejudice to his case. Petitioner offers nothing but self-serving speculation to show that the medical personnel would have testified that the victim did not have scarring or permanent disfigurement. Petitioner failed to present any medical reports or hospital personnel to establish how they would have "exposed the fatal flaws in the State's prosecution." His failure to do so reduces his prejudice claim to mere self-serving speculation. *See Fuqua v. Secy, Dept. a/Corr.*, 409 Fed. Appx. 243,246 (11th Cir. 2010) ("Fuqua has failed utterly to demonstrate the prejudice he claims inured to his defense from counsel's decision not to investigate or call any of these three witnesses. His failure to adduce their testimony at the state evidentiary hearing has reduced the claim of prejudice to mere speculation.") (citing *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir.1980)

("none of the alleged witnesses were called at the § 2255 hearing and no one knows what they would have testified to. All we have is what Guerra says they would have said"); *Estiven v. Secy, Dep't of Corr.*, 2017 WL 6606915 at 4 (11th Cir. Sept. 28, 2017) ("Mr. Estiven merely speculates that, if Ms. Valdes had testified, she would have fleshed out her deposition testimony and added a denial of any participation in the crime; such speculation cannot form the basis of a valid claim.").

"This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (*quoting Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or [by the witness by] affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Reddick has therefore not shown a substantial likelihood that the result of his trial would have been different had counsel investigated the medical records and called medical personnel as witnesses.

Therefore, the state court's finding that Petitioner was not prejudiced by counsel's performance was not objectively unreasonable. *Hittson v. GDCP Warden*,

759 F.3d 1210, 1262 (11th Cir. 2014) (recognizing that a petitioner could not be prejudiced by his counsel's failure to raise a meritless claim).

> 2.    Ground Four: IATC for failure to request jury instruction on lesser included offense of felony battery

The state court instructed the jury about lesser included offenses and instructed them that "lesser crimes indicated in the definition of Aggravated Battery with Great Bodily Harm are Aggravated Battery with a Deadly Weapon and Battery." ECF Doc. 19-2 at 73. Counsel did not request, and the state court did not include, an instruction that felony battery was a lesser included offense to aggravated battery; thus, only aggravated battery with a deadly weapon and simple battery offenses were included as lesser included offenses. The jury instructions were discussed among counsel and the court and then read to the jury without objection.

On the verdict form, the jury was asked to select from four choices as to Reddick: (a) "guilty of Aggravated Battery Causing Great Bodily Harm"; (b) "guilty of the lesser included offense of Aggravated Battery with A Deadly Weapon"; (c) "guilty of the lesser included offense of Battery"; or (d) not guilty. *Id.* at 81-82. If the jury checked choice "(a)," then the jury was asked to determine if, during the commission of the offense, Reddick "actually possessed a firearm" and whether he "carried, displayed, used or threatened to use a firearm." *Id.* The jury chose option (a) but answered "no" to the two follow-up questions.

In ground four, Petitioner argues that his trial counsel was ineffective for not

requesting a jury instruction on the lesser offense of felony battery. Specifically, Reddick argues that "there is a reasonable probability that the jury would not have convicted Petitioner of the greater offense of aggravated battery had they been instructed on the offense of felony battery" because "the evidence presented at trial was insufficient to establish that Petitioner *knowingly or intentionally*[5] caused the great bodily harm or permanent disfigurement." ECF Doc. 1 at 8 (emphasis in original).

Reddick's claim in ground four does not have merit for two reasons: (1) counsel's decision to waive the instruction on felony battery was not deficient performance because it was a reasonable tactical decision and (2) Reddick cannot show prejudice because the jury is presumed to have followed the instructions and the law when it found that the State proved all the elements of aggravated battery causing great bodily harm; thus, it is mere speculation to assume the jury would have chosen any lesser included offense.

---

[5] Simple battery under Florida law occurs when a person "[a]ctually and intentionally touches or strikes another person against the will of the other" or "intentionally causes bodily harm to another person." Fla. Stat. § 784.03. Simple battery rises to felony battery when the person also "[c]auses great bodily harm, permanent disability, or permanent disfigurement." Fla. Stat. § 784.041. Aggravated battery causing great bodily harm occurs when the person "knowingly and intentionally" caused the great bodily harm, permanent disability or permanent disfigurement. Fla. Stat. § 784.045.

(a)    Counsel's performance was not deficient

First, counsel's waiver of the felony battery instruction reflects his modified "all or nothing" trial strategy, which was a reasonable tactical decision. It is clear from counsel's testimony at the evidentiary hearing counsel did not believe the State's evidence against Reddick was sufficient to sustain a guilty verdict on aggravated battery. ECF Doc. 19-7 at 84 ("I think it could be surprising that the finding was made of guilty by the jury. . . . And in looking back at it, I don't agree with the verdict.").

Counsel's strategy, commonly used by criminal defense attorneys, was designed to obtain a verdict of either not guilty of the charged offense, i.e., Aggravated Battery (a second-degree felony punishable by up to fifteen years) or, in the alternative, a verdict of guilty of Simple Battery (a misdemeanor punishable by one year in jail). *See, e.g., Hill v. State*, 788 So. 2d 315, 317 (Fla. Dist. Ct. App. 2001), *abrogated on other grounds by Sanders v. State*, 946 So. 2d 953 (Fla. 2006) ("A competent defense attorney will sometimes decline to request an instruction on a lesser included offense as a matter of reasonable trial tactics."). By removing felony battery (a third-degree felony punishable by up to five years) as an option for the jury's consideration, counsel's strategy was to increase the likelihood of "walking" Petitioner by limiting the jury to just three choices, instead of four, to wit: 1) Guilty of Aggravated Battery (as charged); 2) Not Guilty of Aggravated Battery;

or 3) Guilty of Simple Battery (in which case Petitioner would have been released with time-served).

Numerous courts have upheld this type of strategic decision. *See, e.g., Brown v. Inch*, No. 4:17-CV-509-MW/MJF, 2019 WL 7598696, at *11 (N.D. Fla. Dec. 16, 2019), *report and recommendation adopted*, No. 4:17CV509-MW/MJF, 2020 WL 264973 (N.D. Fla. Jan. 16, 2020) (citing *Druery v. Thaler,* 647 F.3d 535, 540 (5th Cir. 2011) (holding that counsel did not err by foregoing a lesser included offense instruction where counsel "articulated a valid strategic reason for declining the instruction"); *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985) (holding that the Sixth Amendment does not require a defense counsel to request a lesser included offense instruction when it would be inconsistent with or contrary to a defendant's trial theory)).

(b)    Reddick cannot show prejudice from counsel's decision

Second, even if counsel's performance was deficient for not requesting the felony battery instruction, Petitioner still would not be entitled to relief.  This is so because he failed to establish a substantial likelihood that the result of his trial would have been different had counsel done so.  *Harrington*, 562 U.S. at 112.

After all the evidence was presented, the trial court's instruction to the jury included telling them that "**if you decide that the main accusation has not been proved beyond a reasonable doubt**, you will next need to decide if the defendants

are guilty of any lesser included crime." ECF Doc. 19-4 at 33 (emphasis added).

The Court presumes the jury followed the state court's instructions. *See United States v. Roy*, 855 F.3d 1133, 1186-87 (11th Cir. 2017), *cert. denied*, 2018 WL 1369179 51 (U.S. Mar. 19, 2018) ("[T]he Supreme Court has repeatedly held that we must presume that juries follow their instructions.") (citing *Kansas v. Carr*, 136 S. Ct. 633, 645 (2016) (same.); *United States v. Olano*, 507 U.S. 725, 740 (1993) ("[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.")

Therefore, since the jury found that the State had proven the "main accusation" beyond a reasonable doubt, Petitioner was not prejudiced by counsel's decision to waive the felony battery instruction. In other words, because the jury found that the State had proven its case of aggravated battery against Reddick, it would not have found that Reddick was guilty of any lessor included offenses. *See Strickland. Harris v. Crosby*, 151 Fed. Appx. 736, 738 (11th Cir. 2005) (holding that habeas petitioner's assertion that the jury would have found him guilty of the lesser included offense had they been instructed on that offense was based upon "pure speculation" and thus was "insufficient to undermine our confidence in the outcome of his trial.").

3.   Ground Five: IATC for failure to object to instruction giving
     aggravated battery with a firearm as a lesser included offense to
     aggravated battery causing great bodily harm, permanent disability
     or permanent disfigurement

Petitioner contends trial counsel erred in failing to object to the following jury

instruction: "The lesser crimes indicated in the definition of aggravated battery with

great bodily harm are aggravated battery with a deadly weapon and battery."  ECF

Doc. 19-4 at 33-34.  Specifically, he argues "because the deadly weapon form of

aggravated battery was alleged to be a lesser offense of aggravated battery causing

great bodily harm, the jury was denied their ability (pardon power) to find Petitioner

guilty of the lesser offense; because they determined that a weapon was not used or

possessed by Petitioner at all, they were constrained to the greatest offense that did

not include the use of a weapon."  ECF Doc. 1 at 11.  Although Petitioner correctly

notes that aggravated battery involving a deadly weapon is not a lesser included

offense, the undersigned does not find that this instruction deprived him of a fair

trial.

"A defective jury charge raises an issue of constitutional dimension only if it

renders the entire trial fundamentally unfair." *Aumuller v. Secy, Dep't of Corr.*, 2016

WL 3883189 at 2 (M.D. Fla. July 18, 2016) (quoting *Carrizales v. Wainwright*, 699

F.2d I 053, I 055 (11th Cir. 1983))*; see also United States v. Russell*, 717 F.2d

518,521 (11th Cir. 1983) ("Reversible error does not occur as long as the charge on

the whole accurately reflects the legal issues.") (citing *United States v. Nickerson*,

669 F.2d 1016, 1021 (5th Cir. Unit B. 1982)).  "A federal habeas court reviewing a challenged instruction must consider the instruction in the context of both the remainder of the jury instructions, understood as a whole, and the remainder of the trial record."  *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).  "Because it is not enough that there is some 'slight possibility' that the jury misapplied the instruction, the pertinent question 'is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. . . .'"  *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (internal citations omitted).

It appears that Reddick may be seeking relief based on Florida's jury pardon doctrine.  Under that doctrine, "the jury must be given a fair opportunity to exercise its inherent pardon or nullification power by returning a verdict of guilty as to the next lower crime."  *Knight v. State*, 286 So. 3d 147, 150 (Fla. 2019), *citing Dean v. State*, 230 So. 3d 420, 425 (Fla. 2017).  In *Knight,* however, the Florida Supreme Court, receded from its prior precedent to "more closely align Florida with the federal courts and other jurisdictions" that do not recognize the jury pardon doctrine.  *Knight*, 286 So. 2d at 151.

Specifically, the *Knight* court determined that, even though the trial court erred in instructing the jury that the lesser charge of manslaughter included an intent to kill, no fundamental error had occurred where there was no error in the jury instruction on the offense of conviction and where the evidence supported the

offense.   The court found a lack of fundamental error, regardless of whether defendant "was deprived of an opportunity for partial jury nullification." *Id.* ("the fundamental error test for jury instructions cannot be met where, as in this case, there was no error in the jury instruction on the offense of conviction and there is no claim that the evidence at trial was insufficient to support that conviction").

Like the facts in *Knight*, the facts in Reddick's case show that his conviction for aggravated battery was supported by the evidence.   As stated above, there was evidence from the victim that Reddick hit the victim in the head, causing a gash, which required staples and caused a permanent scar.   There was also physical evidence tying Reddick to the scene.   Additionally, there was eyewitness testimony also tying Reddick to the incident and the assault on the victim.

Moreover, Reddick was also not prejudiced because the jury had an opportunity to exercise its "pardon power" by convicting him of simple battery but failed to do so.   *Cf. Haliburton v. State*, 7 So. 3d 601, 606 (Fla. 4th DCA 2009) (finding no fundamental error because "[t]he jury had an opportunity to exercise its 'pardon power' by convicting of simple battery but refused to do so."). As the Court also found in *Haliburton*, "[t]he instruction that the great bodily harm theory was a 'lesser offense' in this case, although potentially erroneous, does not reach down into the validity of the trial such that the conviction on this count could not have been obtained without the error." *Id.* at 605.

4.    <u>Ground Six: IATC for failure to request a justifiable use of force instruction</u>

Petitioner asserts that "at trial, evidence was introduced that the victim was the aggressor that started the fight between the victim, Petitioner, and his codefendants" and that had the jury been given a self-defense instruction "they would have found that Petitioner reasonably believed that it was necessary for Petitioner to defendant codefendant Bee from the much larger and more powerful Javon Griffin, by coming to his aid."  ECF Doc. 1 at 13.

For a failure to request a jury instruction to rise to the level of prejudice under *Strickland*, Petitioner must show a reasonable probability that the outcome would have been different had the instruction been given.  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.  See also Magnotti v. Sec'y for Dep't of Corr.*, 222 F. App'x. 934, 940 (11th Cir. 2007) ("even assuming without deciding that Magnotti's counsel was deficient in failing to request jury instructions on other lesser included offenses, that deficiency does not suggest that there was a reasonable probability that the outcome would have been different").

The evidence in Reddick's case supporting self-defense was weak and the evidence supporting his conviction was strong.  Co-defendant Moore was the only witness who testified that the victim was the aggressor.  But, Moore's testimony was simply that the victim, after being confronted by Bee, started the fight by pushing

Bee. ECF Doc. 19-3 at 298. Moore did not testify, however, that the use of force by Reddick was necessary or reasonable to defend Bee. Also, the testimonies of Moore, the victim, and the eyewitness, Holloway, were consistent that the victim was beaten by at least three adult males, two of which were armed. Thus, the evidence that Bee was in need of defensive assistance is contradicted by the record. In any event, Reddick has not shown that the jury would have accepted his defense-of-others argument such that it is reasonably likely that the outcome of the trial would have been different if the instruction had been given.

Therefore, Petitioner has not met the prejudice prong of *Strickland*, and Petitioner has failed to establish cause for this Court to consider this procedurally defaulted claim on the merits. *Thomas v. Sec'y, Dep't of Corr.*, No. 2:14-CV-338-FTM-29CM, 2017 WL 1345577, at *9 (M.D. Fla. Apr. 12, 2017) ("Because Petitioner cannot demonstrate *Strickland* prejudice, Claim Four is not 'substantial' so as to excuse his failure to exhaust it in state court.") (citing *Martinez*, 132 S. Ct. at 1318-20).

## IV.   CONCLUSION

For the reasons stated above, Reddick is not entitled to habeas relief on any of his Grounds.

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."   *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).   Additionally, this Court must consider the deferential standards prescribed by § 2254, particularly where the state court's factual and credibility determinations are made after an evidentiary hearing.   *See id.*

### B.    Certificate Of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2254 Rule 11(a).   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is

also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.      That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Reddick* 2010-CF-3218, in the Second Judicial Circuit, in and for Leon County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 11th day of June, 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.